for the appellate, Mr. Petrich, and for the appellee, Mr. Blakely. I will advise everyone that Justice Connect is on this panel for today, but he became ill this morning, so he will be listening to the oral arguments tomorrow morning once it hits the court's website. All right, and you may proceed, Mr. Petrich. May it please the court, counsel. My name is John Petrich. I represent the Well, I obviously think the issue is very important. I believe it to be of essentially first impression in my analysis reading the statute. There seems to be no clarifying case law or other authority that casts much guidance on that. We believe that the estate of Pate is entitled to proceeds of the insurance policy for two reasons. First, some 20 years ago, the so-called key man policy was taken out of the name of J.H.U. Incorporated. You could call it a key lady too, right? I think in this case, that might be more appropriate. I don't know how well the buzz phrase does to use the masculine gender. In any event, there's no real dispute that she was indeed a key lady. She was an office manager. She was in charge of rental property, the collection of rents, supervision of maintenance activities, supervision of secretarial staff, making sure the office ran. So clearly enough, J.H.U. Incorporated had insurable interest, both in common law and under the appropriate statute. I don't think it's controversial that that corporation at that time would have suffered some business embarrassment had she passed away during the course of her employment and during the operation of her professional duties. So there's no real dispute that at that time she consented to the acquisition of policy. All per statute, there's no objection to it. Indeed, her name appears on various insurance applications to financial insurance companies. And that went on for some time. However, J.H.U. Incorporated was involuntarily dissolved. Apparently the business, in some form or another, continued to operate. Ms. Pate continued to be an employee of the business at various times, I believe either sole proprietorship or some other type of business entity. Presumably the successor entities or J.H.U. himself paid the appropriate premiums. Certainly the policy question didn't lapse. So the prudential people were getting the policy premiums and continued policy in full force and effect. But I do think it germane that corporation, the named beneficiary, did not exist and has not existed for some 20 years. The consent by Ms. Pate was certainly for the corporation. It was not for an individual. It certainly wasn't for the estate of a now deceased individual for whom she was once a supporting employee. Rather for J.H.U. Incorporated. I think this is a distinction of some moment, Your Honor. If I may be permitted a homely example, I have a law partner. He has a key man insurance policy on me as do I on him. Certainly were I to die unexpectedly, I would not wish there to be a diminution of service to our clients. I would not wish my partner to suffer unnecessary financial embarrassment. I certainly wouldn't want the office staff to be discomfited by my demise. All of that said, I would not have any particular desire for my partner to be buying a condo in Florida or enjoying a high life based upon my departure. What the intentions of the parties were back that many years are entirely spanked. It is however probable, I would suggest, that Ms. Pate's desires were exactly as I've certainly Mr. Uden or the other officers perhaps of Uden Incorporated wanted to avoid that very possibility of business interruption problems that would ensue from her death while she was employed at that corporation. Once that corporation ceased to exist, I find it a little curious that they apparently never notified the Prudential Insurance Company of the change in business status. It seemed to have been a matter of ease and convenience to have filled out the appropriate paperwork with Prudential to let them know, hey, we're not a corporation anymore, and indeed to perhaps re-secure Ms. Pate's acquiescence or agreement with the continuation of the policy. This certainly never happened. Now Plater's argument is that somehow upon the dissolution of a corporation, all of the assets of that now dissolved corporation devolve to the shareholders as per their interests. And citing the statutes in the brief, there's no question about that, that has however set forth a number of rather specific requirements for that to occur, none of which are of the record in this case. None of which I would respectfully suggest were complied with or indeed they were, there is quite a stretch for Plater now to suggest that an asset, a corporation, particularly some 20 years after its dissolution, the asset being not policy itself, but the proceeds of the policy based upon the death of the erstwhile key employee. What would be the difference between the situation here with this life policy and a bank account in the name of the corporation that they forgot about? In 20 years hence, the bank called somebody up and said, don't you want to worry about this bank account? Oh my gosh, we forgot about that. I would respectfully urge your honor there are a few distinctions, some of which are statutory, there are certainly different regulations, requirements, statutes, and case law involving the allegedly abandoned bank account. Well how about a safe deposit box? That would be a much closer question, but there's a two step aspect to the alleged asset here, your honor. Not the policy itself, which arguably could have been an asset to the ongoing business in that it provided peace of mind against possible business interruption or financial hiatus, but the death itself which triggered the production of money. That in the case of a bank account or a safety deposit box certainly wouldn't be in this case a highly contingent asset. In fact they have an insurance policy on the seven, well when she passed away she was 74 years of age. I believe she was at that age shortly before she ceased her employment. But that is an asset that is contingent not only on her passing away, but the assumption I think is a bit speculative. So I do see, I think there is a distinction. Okay. In reading with statute, secondly, the statute itself sets forth the contingencies upon which a corporation or any business really can take an insurance policy. But I think it is highly germane that in this case, well it's our contention that Ms. Pate was retired. Interestingly the plaintiff disputes that and claims in a couple of places in the record that she voluntarily quit her employment and was not retired. I'm not sure that's a huge distinction. Certainly the trial judge didn't find it to be so. And in candor, a 74-year-old woman who stops working at a place she's been working at many, many years is probably retired within the usual meaning of that phrase. However, if she wasn't retired but had simply quit, then I would urge that she's simply a stranger to this and that position would be even stronger. But even assuming the retirement, the statute itself states that the insurable interest to which an employer is entitled is any unfunded mandate for retirement policies or any perhaps other indebtedness. Here, the plaintiff suffered no damages whatsoever as a result of Ms. Pate's death because she was no longer employed there, she was no longer doing anything for them, she was no longer providing services. Indeed, what they received is basically a windfall. Had she been alive to this day, they wouldn't have gotten a nickel for this policy. And well again, I don't think there's much case law that is germane. Well, what case law there is, it suggests that in terms of an insurable interest, that's determined at the time of the policy, at the inception of the policy, right? Yes. And counsel, your opposition is cited to the Wagner case in support of the proposition that if during that, during the period of the policy, at a later date, the interest ceases, that doesn't invalidate the policy. But what do you say to Wagner? That is their position. Certainly, Wagner would say in 1948 or so, perhaps some of the language is still germane. But not only has the insurable interest changed, the very nature, the wolf and womb of the relationship has changed. That policy was taken out, she was a key person, key employee. When it matured, when she died, she was a retired employee. Considerations and the concerns are quite different. So yours is more of a public policy argument? I think it's founded largely on public policy, yes. I mean, there's some, I think in some of the cases that say that to permit someone without an insurable interest benefit from the insurance policy provides a pernicious counter and an incentive to continue the life of that person. I'm not suggesting there was anything insidious here about her death. She passed away from natural causes. But yeah, you can't just take out insurance policies on people who think they're unhealthy on the pulse of hope that they will pass away and enrich you. And it's just a fortuity that I think the timeline exists as it did. She passed away when she did, and that the policy then became payable as a function thereof. I do think there is some ambiguity in that statute, Your Honor. Yes, of course, there is, again, no case law interpreting, at least at the Mike point. But I would suggest the mere intent of that statute is that a retired, that employers' benefits from a retired employee should be limited to their unfunded mandates or other discernible out-of-pocket loss. Here, there's absolutely none. And what the intentions or desires of the parties would be, obviously highly speculative. Everyone that would have first-hand knowledge of this is sadly passed away. But that may well have been the intention of the parties toward the end of both Mr. Uden's and Ms. Pate's life. We never know that. But certainly, no one took any concrete efforts to prevent any of that. And we would respectfully urge the appropriate beneficiary of this policy would be Ms. Pate's estate. Thank you. Thank you. Mr. Blakely. May it please the Court, my name is Steve Blakely, and I represent Robert Smith as a personal friend. Mr. Blakely died on September 21, 2011. He owned a business known as J.H. Udine, Inc., which later was voluntarily dissolved and became a sole proprietorship. During the course of operating this business, he had a woman by the name of Alma Pate who worked for him. Alma died September 14, 2011. Alma Pate was the office manager. Her estate is the defendant in this case. J.H. Udine, Inc. purchased a life insurance policy on Alma Pate during 1991 in the face amount of $100,000. J.H. Udine, Inc. was a sole beneficiary. Udine paid the premiums during this period of time, from the time the policy was taken out until Alma Pate died. The solution to who is entitled to the money that we're fighting about is fairly simple. An employer can insure the life of an employee if two things can be shown. First, an insurable interest at the time the policy is taken out. And if that insurable interest disappears at some later time, it doesn't matter. As long as there's an insurable interest at the time the policy is taken out, an employer can insure the life of an employee. We all agree, I think, opposing counsel agrees, that J.H. Udine, Inc. had an insurable interest on the life of Alma Pate at the time the policy was taken out in this case. The last thing is that there's consent from the employee. The pleadings in this case show that the defendant admits there was consent. I believe the record C-67 Alma Pate signed the insurance application, so there's no dispute whether there is or whether there was a lack of any consent. The defendant's argument seems to be that it just simply isn't fair that the money goes to Udine Estate. The statute doesn't say we're going to decide whether we think it's fair or right, but as a matter of fairness, it was J.H. Udine, Inc. that paid the premiums all these years. It was J.H. Udine, Inc. that had an interest in the continued life of Alma Pate. Mr. Kiger, who is the plaintiff, or the defendant in this case, and the personal representative of the estate of Alma Pate, didn't pay these premiums. Alma Pate's family didn't pay these premiums. Her employer did. And to say, well, okay, all these years go by, you pay the premiums, and we've got what's really not a huge amount of money, it's a significant amount, but not huge, and it ought to go to her family. I mean, it simply doesn't make any sense. That's not what the statute says. Now, as far as this issue about the corporation having been voluntarily dissolved, correct, it was. But who does that corporation or the shares now belong to? Well, it now belongs to the shareholder. The only one was J.H. Udine, and now his estate. All of his property belongs to his estate, and part of his property were the shares in this corporation, and this corporation is the beneficiary of this life estate policy. So there just simply isn't any way for Mr. Cogger to get around that. We have a statute that is crystal clear on how and when an employer can insure their employee. We have no material issue back there. It's very clear that the estate of Julianne H. Udine hits on every one of those factors that they have to in order to employ or insure an employee in this case, which was all okay. There isn't any question but that a corporation's assets upon dissolution belong to the shareholders as tenants in common. That's what case law says. That's what the statute says, and the shareholder in this case was Julianne Udine. Passes to him. He dies, passes to his estate. So the trial court was correct in ruling as a matter of law that the estate of Julianne H. Udine is entitled to the proceeds of the insurance policy in this case, and for that reason you should just say, gee, Judge, it just isn't fair. And that's true in a way, in a visceral and position of fundamental justice and right. I believe that isn't fair. But I also would respectfully urge that the statute that he asserts is so crystal clear supports that very inference because it is crystal clear that a retired employee's insurable interest to an erstwhile employer is limited to unfunded mandates. Now, was she a retired employee at the time the policy was taken out? No. Was there an insurable interest at the time the policy was taken out? Of course it was. Did that insurable interest exist when she was dead? Of course not, because she wasn't employed there. And the erstwhile corporation and subsequent sole proprietorship have no expectation of a windfall. This isn't fair. They have the benefit that they paid for many, many years of a term policy on a key employee. Had she passed away at any time during, certainly during the course of the corporation, I assert that of course after that had been dissolved, the question is a bit different. But they have the peace of mind. Once she was no longer employed there, there was no expectation of financial benefit or windfall from her death, certainly no legitimate expectation of such a windfall. And we would again request a reversal. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness of the next case.